UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BRAIN AND SPINE SURGERY, P.C.,

          *Plaintiff*,

-against-

INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 137 WELFARE FUND and BASIL
CASTROVINCI ASSOCIATES, INC.,

          *Defendants*.

23-CV-6145 (ARR) (LGD)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

    Plaintiff, Brain and Spine Surgery, P.C., is a health care provider and brought this breach of contract and unjust enrichment action against the International Union of Operating Engineers Local 137 Welfare Fund ("the Fund") and Basil Castrovinci Associates, Inc. ("Basil") in the Supreme Court of the State of New York. Mot. Remand, Ex. A. at ¶¶ 26–47 ("Complaint"), ECF No. 12-2. The Fund is a benefits plan established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*, and it provides "insurance and other benefits to eligible members." *Id.* ¶ 4; *see also* Defs.' Resp. to Pl.'s Mot. Remand 1 ("Defs.' Opp'n"), ECF No. 13. Basil "provides consulting services and [aids in the] administration of insurance plans." Compl. ¶ 3.

    The Fund removed this case to federal court, arguing that ERISA preempts plaintiff's breach of contract and unjust enrichment actions. Notice of Removal ¶¶ 7–8, ECF No. 1. Basil consented to removal. *Id.* ¶ 9. Plaintiff subsequently moved to remand this case to state court. Mot. Remand, ECF No. 12. For the reasons set forth below, I deny plaintiff's motion.

## BACKGROUND

    This case arises out of the Fund's refusal to reimburse plaintiff for medical services that

two of its surgeons provided to a beneficiary of the Fund. Compl. ¶¶ 6, 25. After performing a successful surgery on a patient who received health insurance coverage from the Fund, Drs. James Harrington and Mark Ishak, two surgeons at Brain and Spine, individually submitted a Health Insurance Claim Form to the Fund requesting reimbursement for their services. *Id.* ¶¶ 6–10. Each doctor billed $351,335.20 for the medical services he provided. *Id.* ¶¶ 9–10. Shortly after the Fund received these claim forms, Basil faxed plaintiff two payment proposals. *Id.* ¶¶ 12, 19. One of the proposals, the Harrington Agreement, purported to cover the services that Dr. Harrington provided and offered $80,760 for his services. *Id.* ¶¶ 12–14. The other proposal, the Ishak Agreement, purported to cover the services that Dr. Ishak provided and offered $24,228 for his services. *Id.* ¶¶ 19–21. Each agreement acknowledged that these offered amounts were the "max [the] plan allows." Defs.' Opp'n, Ex. A ("the Agreements"), ECF No. 13-1. After Brain and Spine received these proposals, both doctors, on behalf of plaintiff, immediately executed and returned their respective agreements. Compl. ¶¶ 16, 23. The Fund has yet to pay the amounts it offered in either agreement. *Id.* ¶¶ 18, 25.

As a result of these events, plaintiff filed this breach of contract and unjust enrichment action in New York State court. Notice of Removal ¶ 1; *see generally* Compl. The Fund thereafter removed this case to federal court, arguing that ERISA completely preempts plaintiff's claims. Notice of Removal ¶¶ 7–8. Defendants assert no other reason for federal court jurisdiction. *See generally id.* Plaintiff now moves to remand its case to state court. *See generally* Mot. Remand.

## LEGAL STANDARD

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

treaties of the United States." 28 U.S.C. § 1331. Generally, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). There is, however, an exception to this rule. "A defendant may properly remove a state-law claim when a federal statute 'wholly displaces the state-law cause of action,' such that the claim, 'even if pleaded in terms of state law, is in reality based on federal law.'" *McCulloch Orthopedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004)). When a federal law wholly displaces a state law cause of action, it is said to "completely preempt[] the state-law cause of action." *Davila*, 542 U.S. at 208 (cleaned up).

ERISA's enforcement mechanism, delineated at 29 U.S.C. § 1132(a) ("ERISA § 502(a)"), is one of the federal statutes that completely preempts state law causes of action. *Id.* at 208, 214. ERISA provides a "uniform regulatory regime over employee benefit plans." *Id.* at 208. In § 502(a), Congress set forth a comprehensive civil enforcement scheme under which a participant or beneficiary of an ERISA-governed plan can bring civil actions: "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Because "Congress intended that this provision would create a comprehensive, exclusive remedial scheme . . . any state court actions that fall within . . . [its scope] are removable to federal court, even if the complaint only pleads state common law claims on its face." *Enigma Mgmt. Corp. v. Multiplan, Inc.*, 994 F. Supp. 2d 290, 296 (E.D.N.Y. 2014) (citation omitted).

The Supreme Court established a two-pronged test in *Davila* to determine when ERISA § 502(a)(1)(B) completely preempts a state law claim: ERISA completely preempts a state law cause of action if (1) "an individual, at some point in time, could have brought his claim under

3

ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions." 542 U.S. at 210. In *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011), the Second Circuit elaborated on the *Davila* test and disaggregated the first prong into two distinct elements: (1) the plaintiff must be the "*type* of party that can bring a claim pursuant to § 502(a)(1)(B);" and (2) the "*actual claim*" must be construable "as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Id.* at 328.

It is the defendant's burden to establish that the "case is preempted by ERISA and properly removed to federal court." *Enigma*, 994 F. Supp. 2d at 296. In determining whether a defendant has met this burden, a court can "look beyond the mere allegations of the complaint to the claims [for reimbursement] themselves (including supporting documentation)." *Montefiore*, 642 F.3d at 331. Generally, "there is a presumption against removal, and uncertainties tend to weigh in favor of remand." *Alvarado v. Sweetgreen, Inc.*, --- F. Supp. 3d ---, 2024 WL 182761, at *5 (S.D.N.Y. Jan. 17, 2024) (quotation omitted).

## DISCUSSION

I will apply the *Davila* two-prong test to plaintiff's state law unjust enrichment claim to determine whether the claim is completely preempted by ERISA.[1] I conclude that it is.

### I. Davila *Prong One*

Under the first part of *Davila* prong one, I must determine whether plaintiff is the type of party that could bring a claim under ERISA § 502(a)(1)(B). *Montefiore*, 642 F.3d at 328. If an individual is a "participant or beneficiary" of an ERISA plan, then that person may bring a civil action under § 502(a) to recover benefits due to him under the terms of that plan. 29 U.S.C.

---

[1] Because plaintiff's unjust enrichment claim is completely preempted, I do not need to analyze whether plaintiff's breach of contract claims are also completely preempted; I take supplemental jurisdiction over those claims. *See infra* Discussion III.

4

§ 1132(a)(1)(B); *see also id.* § 1002(7) (defining a "participant"); *id.* § 1002(8) (defining a "beneficiary"). Although Brain and Spine, as a health care provider, does not fit the description of either a participant or a beneficiary, the Second Circuit has established a "narrow exception" that can apply to health care providers: If a participant or beneficiary assigns a claim to the health care provider "in exchange for health care," that health care provider may have standing to assert a claim under ERISA. *Montefiore*, 642 F.3d at 329 (quotation omitted). Defendants argue that plaintiff has standing to assert a claim under ERISA because the patient assigned his claims to plaintiff. Defs.' Opp'n 2, 5. Defendants point to no evidence to support this assertion. *See generally id.* Plaintiff, however, neither disputes that this assignment occurred nor argues that any assignment was improper. *See generally* Pl.'s Mem. Supp. Mot. Remand (Pl.'s Mem."), ECF No. 12-3; Pl.'s Reply Supp. Mot. Remand ("Pl.'s Reply"), ECF No. 14. I accordingly treat as undisputed the fact that plaintiff received an assignment of the patient's claim. *See Romano v. Kazacos*, 609 F.3d 512, 520 & n.4 (2d Cir. 2010) (explaining that it is permissible to look to materials outside the pleadings if subject matter jurisdiction is contested). Brain and Spine is accordingly the type of party that could bring a claim under ERISA.

I must next decide whether the actual claims plaintiff makes can be construed as colorable claims for benefits under ERISA. *Montefiore*, 642 F.3d at 328. In determining whether a colorable ERISA claim exists, the Second Circuit has distinguished between "right to payment" claims and "amount of payment" claims. *Id.* at 331. A right to payment claim is a colorable ERISA claim and exists when the claim "implicate[s] coverage and benefit determinations as set forth by the terms of the ERISA benefit plan." *Id.* at 325. If the "meaning of the plan language is disputed and requires the Court's interpretation," then the "claims are the type that can be brought under ERISA." *Enigma*, 994 F. Supp. 2d at 298 (quoting *Neuroaxis Neurosurgical Assocs., P.C. v. Cigna*

5

*Healthcare of N.Y., Inc.*, No. 11-CV-8517, 2012 WL 4840807, at *4 (S.D.N.Y. Oct. 4, 2012)). On the other hand, amount of payment claims involve the "computation of contract payments or the correct execution of such payments" and are "typically construed as independent contractual obligations between the provider and the . . . benefit plan." *Montefiore*, 624 F.3d at 331. These amount of payment claims are not colorable ERISA claims. *Id.*

Defendants argue that plaintiff's unjust enrichment cause of action is a right to payment claim because the "case turns on the issue of lack of payment," and they did not pay plaintiff "due to a lack of coverage for the claims available to the underlying [patient]." Defs.' Opp'n 4–5. Defendants, therefore, contend that the unjust enrichment "matter cannot be decided without recourse to the Fund's plan of benefits." *Id.* at 4. Plaintiff, on the other hand, argues that its "unjust enrichment claim does not impermissibly refer to or connect with any ERISA plans, and thus, is not preempted under federal law." Pl.'s Resp. to Order to Show Cause 2 ("Pl.'s Resp."), ECF No. 15.[2]

Plaintiff's argument is unavailing. Plaintiff's unjust enrichment claim, as it is framed in the complaint, relies upon the inference that the services plaintiff provided are covered under an ERISA-governed plan. Plaintiff alleges that "in exchange for [the] compensation" that patient provides the Fund through premiums, the Fund "owes [p]atient . . . an obligation to make sure [p]atient receives *covered* medical services and to pay for said *covered* medical services." Compl. ¶¶ 41–42 (emphasis added). Plaintiff then alleges that it "conferred a benefit" on the Fund by providing "valuable emergency medical care" to the patient and that the Fund is therefore responsible for paying plaintiff the "reasonable value" of its services, which it quotes at

---

[2] As I explain later, the "refer to or connect with" legal test is relevant to the doctrine of express preemption, not the doctrine of complete preemption. *See infra* Discussion II.

$702,670.40, along with late fees and statutory interest. *Id.* ¶¶ 43, 45, 47. The inference required by this string of allegations—and, ultimately, plaintiff's theory of liability—is that the Fund must pay plaintiff the reasonable value of the services it provided to the patient because the services are "covered" by the ERISA-governed plan. To determine whether that is true, I will have to interpret an ERISA-governed plan. As such, plaintiff's claims do not "appear to be claims regarding . . . underpayment or untimely payment, where the basic right to payment has already been established and the remaining dispute only involves obligations derived from a source other than the [p]lan."[3] *Montefiore*, 642 F.3d at 331. In fact, the Fund argues in its opposition that it refused to pay plaintiff because the services were not covered under the plan. Defs.' Opp'n 4–5. Because resolution of this claim would depend on an interpretation of the terms of an ERISA-governed plan—whether the services plaintiff provided are covered medical services—it is a colorable claim for benefits. *See Montefiore*, 642 F.3d at 331 (determining that a state law cause of action was a colorable claim for benefits under an ERISA plan because the state law claim "appear[ed] to implicate coverage determinations under the relevant terms of the Plan," especially considering that the defendant Fund refused to reimburse the plaintiff because the "services [were] not covered under [the] plan"); *Bassel v. Aetna Health Ins. Co. of New York*, No. 17-CV-5179 (ERK), 2018 WL 4288635, at *5 (E.D.N.Y. Sept. 7, 2018) (determining that the plaintiff's state law claim that the defendant fund owed him for "medically necessary health care services" he rendered to patients was a colorable claim under ERISA because "[w]hether this is correct depends upon interpretation of his patients' plans"); *Star Multi Care Servs. Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 287 (E.D.N.Y. 2014) ("[C]onsideration of the merits of plaintiff's claim would require the Court to review the terms of the plan . . . . This weighs in favor of finding that plaintiff's breach of contract

---

[3] For a discussion of the role the alleged contracts play, see *infra* Discussion II.

claim is in fact a colorable ERISA claim."). I therefore conclude that plaintiff's unjust enrichment claim is a colorable ERISA claim.

## II. Davila *Prong Two*

Even if a claim is a right to payment claim, it will not be completely preempted if there is another "independent legal duty that is implicated by defendant's actions." *Davila*, 542 U.S. at 210. If liability "derives entirely from the particular rights and obligations established by the benefit plans," however, then a state law claim does not raise an independent legal duty. *Id.* at 213. Further, if the defendant's action that implicates the independent obligation is "inextricably intertwined" with an ERISA-governed plan, then that action cannot raise an independent legal duty sufficient to prevent complete preemption. *Montefiore*, 642 at 332 (concluding that the defendant-Fund's promise to the plaintiff-provider that it would cover certain services before the plaintiff provided said services did not implicate a separate independent legal duty because this "pre-approval process was *expressly required by the terms of the plan itself* and . . . therefore inextricably intertwined with the interpretation of Plan coverage and benefits").

Plaintiff argues that defendants have an independent legal duty under state contract law (due to the agreements) and quasi-contract law to pay plaintiff the reasonable value of the services it provided. Pl.'s Mem. 10. Defendants, on the other hand, argue that plaintiff's claims do "not raise any independent legal obligation" because the agreements were not for the "underlying [medical] services (which is governed by the Plan Document)" but were instead "agreement[s] by the . . . plaintiff[] to accept the payment [offered] . . . as 'payment in full' [and not to bill the patient for the remaining charges]." Defs.' Resp. to Order to Show Cause 2, ECF No. 16. Even if the agreements were for the underlying medical services, nothing in the agreements create an independent legal duty that would require the Fund to pay the *full claim* at issue here; the offers in

the agreements—$80,760 and $24,228—are far below the $702,670.40 that plaintiff asserts the Fund owes it in its unjust enrichment claim. Compl. ¶¶ 27, 34, 47. The obligation to pay the reasonable value of the services must come from a different source. As plaintiff alleges in its complaint, the obligation to pay the reasonable value of the services arises from the plan, which requires the Fund to pay for "covered medical services." *Id.* ¶ 42. To determine whether the services provided qualify for reimbursement, however, I will need to look to the ERISA-governed plan. As such, plaintiff's state law claim of unjust enrichment is inextricably intertwined with the ERISA plan and does not implicate an independent legal duty. *See Enigma*, 994 F. Supp. 2d at 301–02 (determining that the plaintiff's unjust enrichment claim did not implicate an independent legal duty because a separate contract between the plaintiff and one of the defendants did not allow the court to resolve the dispute at hand; instead, the court would have to look to the ERISA plan to understand the meaning of terms in the contract that were relevant to the reimbursement that the defendants allegedly owed the plaintiff); *North Shore-Long Island Jewish Health Care Sys., Inc. v. MultiPlan Inc.*, 953 F. Supp. 2d 419, 441–42 (E.D.N.Y. 2013) (determining that contract law did not provide an independent legal duty sufficient to prevent preemption because the at issue independent contract between the defendant-plan and the plaintiff-provider did not cover the parties' obligations related to the plaintiff's claims, which in this case involved "instances of untimely or underpaid claims"; as a result, the claims were inextricably intertwined with interpretation of the ERISA-governed plan).

Plaintiff further argues that although the "unjust enrichment claim is for monies the plan is required to pay," a state law claim "'enforces obligations independent from the ERISA plan . . . when only the amount of payment is pegged to the terms of the plan'." Pl.'s Resp. 2 (quoting *Atlantic Neurosurgical Specialists, P.A. v. Multiplan, Inc.*, No. 20-CV-10685, 2022 WL 158658

9

(S.D.N.Y. Jan. 18, 2022). For support, plaintiff relies primarily on *Plastic Surgery Center, P.A. v. Aetna Life Insurance Co.*, 967 F.3d 218, 230 (3d Cir. 2020). This case is not, however, instructive. First, *Plastic Surgery* is an express preemption case, not a complete preemption case. *Id.* at 229–30. These doctrines involve distinct issues and employ different tests to determine whether a claim is preempted. Express preemption is a form of defensive preemption, which occurs when Congress "withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision." *Arizona v. United States*, 567 U.S. 387, 399 (2012). As an "ordinary defensive preemption claim, express preemption cannot support federal jurisdiction because it would not appear on the face of a well-pleaded complaint." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014). ERISA does expressly preempt a state *law* that "relates to any employee benefit plan." *Id.* at 240. As I previously discussed, however, under the doctrine of complete preemption, "a plaintiff's 'state cause of action [may be recast] as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.'" *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009) (alterations in original) (quoting Wright & Miller, 14B Fed. Prac. & Proc. Juris. § 3722.2). Courts must employ the *Davila* two-prong test to determine whether ERISA completely preempts a state law *cause of action*.

Second, even if *Plastic Surgery* were applicable, it is distinguishable on its facts. In *Plastic Surgery*, two out-of-network providers performed surgeries on patients insured by the defendant after the defendant made oral promises to pay for the care. *Id.* at 223–24. For one patient, the defendant agreed to pay "a reasonable amount for [the] services according to the terms of the Plan," and for the other patient, the defendant agreed to pay at the "highest in-network level." *Id.* at 224 (cleaned up). After the plaintiff performed these services, however, the defendant paid less than promised, and as a result, the plaintiff brought a state law claims of breach of contract, unjust

enrichment, and promissory estoppel. *Id.* The Third Circuit first concluded that the plaintiff's contract and promissory estoppel claims were not claims for benefits under ERISA plans. *Id.* at 233. It reasoned that, instead, these claims relied upon defendant's promise to cover "all component services (not merely those services covered under the terms of the plan[])" and that the scope of defendant's duty was, therefore, determined by theses promises. *Id.* at 231–32. The court also determined that just because the promises referenced the ERISA plan did not mean that ERISA expressly preempted the state law claims. *Id.* at 233. The court reasoned that only a cursory review of an ERISA plan was required to determine the payment rate for any given service; no coverage determinations were required because the defendant agreed that it would cover all component services. *Id.* at 232–34. This sort of reference to an ERISA plan, the court concluded, does not result in express preemption. *Id.* at 235.

In this case, however, plaintiff does not allege that defendants promised to pay the reasonable value for all of plaintiff's services, *see* Compl. ¶¶ 12–39; defendants instead only offered to pay specific amounts for plaintiff's services, *see* Agreements. As a result, to determine whether the Fund is required to pay more than offered for the services provided, or, in other words, the *reasonable value* of the services, I will have to make both a coverage determination—whether the benefits plan covers the services plaintiff offered—and, if the services are covered, a rate determination. As such, plaintiff's claim for the reasonable value of its services does not involve a mere cursory review of an ERISA plan to determine the applicable rate of pay for a given medical service, and *Plastic Surgery* is unhelpful.

Accordingly, plaintiff's unjust enrichment claim does not escape complete preemption under the *Davila* test.

### III. Supplemental Jurisdiction

I decline to decide whether ERISA preempts plaintiff's breach of contract claims because I have supplemental jurisdiction over those claims. District courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A federal court "must first have before it a claim sufficient to confer subject matter jurisdiction" to exercise supplemental jurisdiction. *Montefiore*, 642, F.3d at 332. Further, to have supplemental jurisdiction over the state claim, both the federal and state claims must stem from the same "common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). As I previously discussed, Brain and Spine's unjust enrichment claim is completely preempted by ERISA, which gives rise to federal subject matter jurisdiction. Further, the parties "do not dispute that all of the claims asserted by [Brain and Spine] involve the Fund's alleged failure to reimburse [Brain and Spine] for medical services provided to Plan beneficiaries"—specifically, the patient upon whom the doctors operated. *Montefiore*, 642 F.3d at 332. Accordingly, Brain and Spine's breach of contract claim is properly subject to supplemental jurisdiction. *See Montefiore*, at 332–33 (concluding that the district court had supplemental jurisdiction over any remaining state law claims because it determined that ERISA completely preempted at least some of the claims for reimbursement); *Enigma*, 994 F. Supp. 2d at 304 ("Since I have determined that this court has subject matter jurisdiction over . . . [some of the plaintiff's causes of action under the ERISA complete preemption doctrine], this court can exercise supplemental jurisdiction over the related state law breach of contract claim . . . .").

## CONCLUSION

For the foregoing reasons, I deny plaintiff's motion to remand this case to state court.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:        April 10, 2024
              Brooklyn, New York

13